

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00081-CV

IN THE INTEREST OF B.H.R., A CHILD

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 2016-128

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

The Texas Department of Family and Protective Services (the Department) brought suit in Wood County to terminate Della's parental rights to her daughter, Brie.[1] Following a jury trial, Della's parental rights were terminated.[2] In its order of termination, the trial court found, (1) under Section 161.001(b)(1)(D) of the Family Code, that Della placed or allowed the child to remain in conditions or surroundings that endangered the child's well-being; (2) under Section 161.001(b)(1)(E) of the Family Code, that Della engaged in conduct or placed the child with persons who engaged in conduct that endangered the child's well-being; (3) that, under Section 161.001(b)(1)(O) of the Family Code, Della failed to comply with a court-ordered service plan that established the actions necessary for her to obtain Brie's return; and (4) that termination was in the child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2016).

In this accelerated appeal, Della argues that (1) the trial court erred in failing to dismiss the case under Section 263.401 of the Family Code; (2) the evidence was factually insufficient to support the statutory grounds for termination; and (3) the evidence was factually insufficient to support the court's finding that termination was in the best interest of the child.

We affirm the trial court's judgment because (1) Della waived her right to object to the trial court's failure to dismiss the suit; (2) termination under Ground O was supported by factually

---

[1]In order to protect the child's identity, in this opinion we refer to appellant mother as Della, the child at issue as Brie, the child's brother as Henry, Brie's father as Brent, and the children's maternal aunt as Kasey. *See* TEX. R. APP. P. 9.8.

[2]Brent's parental rights to Brie were also terminated, but this appeal pertains only to Della's rights to Brie.

sufficient evidence; and (3) there was factually sufficient evidence that termination was in the child's best interest.

## I.     Procedural and Factual Background

Della is the mother of one son, Henry, and one daughter, Brie.  Brent is the father of Brie, but not Henry.  At the time of trial in this case, Henry was eleven or twelve years old and Brie was sixteen months old.

In December 2015, while Della was still pregnant with Brie, the Department received a report alleging domestic violence in the home of Della and Brent.  Amber Moline, the Department caseworker assigned to the case, interviewed then ten-year-old Henry, who told her that he did not feel safe in the home because Della and Brent, whom Henry called dad, frequently fought and that when that happened, "it was scary because his mom would get hit.  And when she would, she would try to either get a gun or a cell phone to call for help."  The boy said that Brent would threaten to kill them, and Henry was afraid of him and "afraid that his dad was going to kill his mom and his [unborn] baby sister."  Henry also said that Brent would retaliate by leaving him and his mother stranded without transportation.

Della admitted that she and Brent "fought a little bit," but claimed that it "never got physical."  Della claimed that Henry was not afraid of Brent, but rather, that he did not "care for him" or his "structure."  She also denied that Brent had ever stranded them on the side of the road, but she admitted that they had "taken off walking several times."

Because Della refused to leave the house and go somewhere safe from abuse, the Department obtained temporary managing conservatorship of Henry and, after several attempts,

3

located Henry and placed him with his maternal aunt, Kasey. Kasey testified that when Henry first arrived at her home, he was "very scared," angry, and not sleeping very well at night. She indicated that if Henry believed Brent to be nearby or to be coming to visit, he became "real nervous and scared" and stated that when he saw a truck that resembled Brent's, he got down on "the ground real fast." After undergoing counseling and therapy at school, Henry had shown substantial improvement, appearing to be more calm, having fewer outbursts, and sleeping through the night. Kasey has since been named Henry's permanent managing conservator, with Della still retaining a role in Henry's life.

In February 2016, Brent filed a petition for divorce from Della, seeking to have them appointed joint managing conservators of the as-yet-unborn Brie. Two days after Brie was born, the Department intervened in the divorce action, and due to the danger posed by Della's continuing relationship with Brent, the Department was appointed emergency temporary managing conservator of Brie.

The Department also obtained a writ of attachment for Brie, but it took several days to find her. On April 19, 2016, Kyle Henson, an investigator with the Wood County Sheriff's Office, saw Della, Brent, and Brie driving away from a residence in a truck that was hauling a travel-trailer loaded with personal belongings. It appeared as if they were "leaving town," so Henson stopped the truck. After a lengthy argument with Brent, the couple gave Brie to Kathy Thurman, the Department Investigator, and Brie was placed with her brother, Henry, at the home of Della's sister, Kasey.

4

After further hearings, the trial court appointed the Department temporary managing conservator of Brie, granted Della visitation with the child, and ordered Della to complete a service plan if she was to have the child returned to her. On June 7, 2017, the Department filed an amended petition that sought to terminate the parental rights of Della and Brent as to Brie, alleging several grounds for termination as to each parent.

At the conclusion of the resulting three-day trial, the jury returned a verdict wherein it found that the parent-child relationship existing between both Della and Brent with Brie should be terminated. Based on the verdict, the trial court entered an order of termination, finding that Della placed or allowed the child to remain in conditions or surroundings that endangered the child's well-being, that she had either engaged in conduct or placed the child with persons who engaged in conduct that endangered the child's well-being, that she had failed to comply with a court-ordered service plan that established the actions necessary for her to obtain Brie's return, and that termination was in the child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).[3] Della's motion for new trial was denied, and she filed this appeal.

## II.     Della Waived Her Right to Dismissal

In her first point of error, Della contends that the trial court erred by failing to dismiss the case as mandated by Section 263.401 of the Texas Family Code (which says that a trial on the merits of a termination proceeding, absent limited circumstances, must begin within a year of the trial court signing an order appointing the Department as temporary managing conservator). Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, sec. 263.401, Tex. Gen. Laws 2108, 2112–13

---

[3]On September 15, 2017, the trial court entered a nunc pro tunc order of termination.

5

(amended 1997, 2001, 2005, 2007, 2015, 2017) (current version at TEX. FAM. CODE § 263.401).[4] However, Section 263.402 requires a party to a termination proceeding to move for dismissal before commencement of a trial on the merits. Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, sec. 263.402, 1997 Tex. Gen. Laws 2108, 2113–14 (amended 1997, 2001, 2005, 2007, 2015, 2017) (current version at TEX. FAM. CODE § 263.402).[5] If the party fails to make a timely motion to dismiss, the party "waives the right to object to the court's failure to dismiss the suit." *Id.*

The record reflects that the court appointed the Department as emergency temporary conservator of Brie in April 2016. Therefore, the dismissal date pursuant to Section 263.401 could have become appropriate in April 2017. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, sec. 263.401, Tex. Gen. Laws 2108, 2112–13 (amended 1997, 2001, 2005, 2007, 2015, 2017). After an extension was granted, the trial on the merits in this case did not commence until July 31, 2017. However, Della failed to file a motion to dismiss the suit prior to the commencement of the trial. Therefore, Della waived her right to object to the court's failure to dismiss the suit. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, sec. 263.402, 1997 Tex. Gen. Laws 2108, 2113–14 (amended 1997, 2001, 2005, 2007, 2015, 2017).

---

[4]Section 263.401(a) has since been amended to read, in pertinent part, that "[u]nless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1) . . . the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order." TEX. FAM. CODE ANN. § 263.401(a) (West, Westlaw through 2017 R.S. and 1st C.S.).

[5]During the pendency of this case, Section 263.402 was amended to delete subsection (b). Act of May 26, 2017, 85th Leg., R.S., ch. 317, § 28, sec. 263.402, 2017 Tex. Sess. Law Servs. 615, 625–26 (West) (codified at TEX. FAM. CODE § 263.402); Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 13, sec. 263.402, 2017 Tex. Sess. Law Servs. 716, 722 (West) (codified at TEX. FAM. CODE § 263.402).

**III.    The Grounds for Termination Were Supported by Sufficient Evidence**

The trial court found by clear and convincing evidence that grounds existed to terminate Della's parental rights by placing the child in an endangering condition, by placing the child with persons who engaged in conduct that endangered the child, and by failing to comply with a plan of service for the child's return.    These are grounds for termination under Sections 161.001(b)(1)(D), (E), and (O) of the Texas Family Code.   In her second point of error, Della argues that there is factually insufficient evidence to support the statutory grounds.

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Indeed, parents have a fundamental right to make decisions concerning "the care, the custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).  This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights."  *Id.* at 500.  "'[I]nvoluntary termination statutes are strictly construed in favor of the parent."  *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012).  "Clear and convincing evidence" is that "degree

7

of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In our review of factual sufficiency, we give due consideration to evidence that the trier of fact could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994) (citations omitted)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

8

"Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.). Under Ground O, the Department was required to prove that Della:

> failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent . . . for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O).[6]

Kim Veihl, the Department conservatorship caseworker, reviewed the court-ordered service plans with Della. When Henry entered the Department's care, Della was required to, in pertinent part, (1) attend supervised visits and abide by the visitation rules; (2) obtain and maintain employment; (3) disclose the names of individuals living in her home; (4) obtain stable housing; (5) attend a support group for victims of domestic violence; (6) maintain weekly contact with the Department; and (7) notify the Department of any changes in address. When Brie was removed from Della's care, Della's service plan was amended to reflect that she needed to comply with the original service plan from Henry's case as well as to (1) obtain and maintain stable legal employment for six to thirteen consecutive months; (2) notify the Department of any address or telephone number changes within seventy-two hours; (3) participate in individual counseling;

---

[6]Della does not challenge the findings that the child was removed for abuse or neglect or that the child had been in the Department's care for nine months at the time of trial.

9

(4) maintain stable housing free of safety hazards for at least six months; and (5) allow access to her home.

The record reflects that Della completed a full psychological analysis, completed her required parenting classes, and completed ten sessions with a support group for the victims of domestic violence. However, she admittedly failed to successfully complete individual counseling with any of the therapists she had seen during the case. One therapist, Stenet Frost, characterized her counseling as "[m]arginally successful" because, while "she did come, she did participate," Della would continue to be in danger because she was not going to leave Brent and "was not going to be able to be protective" of the child. When her second counselor recommended that Della attend classes on anger management, she refused to return and did not attend the recommended instructional sessions. Della's third counselor discharged her, stating, "[T]here is no reason for me to see this woman because she will not verbalize the issues that are going on with her." Furthermore, when Della claimed to have moved away from Brent, she only provided the Department with a post office box address (as opposed to a physical address), but even the mail sent to that post office box was returned to the sender. In addition to failing to provide a physical address, Della also failed to provide any proof of employment.

Despite Della's achievement of some of the plan's goals, the evidence establishes that other requirements of the plan were not met. Ground O does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated or the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Neither the

10

statute nor the order which was entered prescribes the degree to which the parent must comply with the court order, and neither the order nor the statute "make[s] a provision for excuses" for the parent's failure to comply with such an order. *See id.*; *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied), *overruled on other grounds by In re A.M.*, 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, no pet.)). Della's inability to successfully complete individual counseling and provide stable housing and employment are significant deficiencies. Accordingly, we find that the trial court's determination that Della failed to comply with the requirements of the family service plan is supported by factually sufficient evidence, and we overrule this point of error. Because we find sufficient evidence to support the court's finding under Ground O, we need not address Della's challenges to the sufficiency of the evidence supporting Grounds D and E.

## IV. There is Factually Sufficient Evidence that Termination Was in the Child's Best Interests

In her final point of error, Della contends that the evidence is factually insufficient to support the trial court's finding that termination was in the best interest of the child.

Termination of the parent-child relationship can occur only if termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2). "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S.*, *Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

11

The best-interest standard is not met merely because a child might be better off living elsewhere with more prosperous parents. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Forth Worth 2001, no pet.); *see In re A.L.D.H.*, 373 S.W.3d 187, 194 (Tex. App.—Amarillo 2012, pet. denied). The focus of a best-interest analysis is on the best interest of the child, not the best interest of the parent. *See Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.— Dallas 1995, no writ).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*N.L.D.*, 412 S.W.3d at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2015). A parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment may be considered when looking at the child's best interest. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). The analysis of evidence relating to one factor may be adequate in a particular situation to support a finding that termination is in the best interest of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by J.F.C.*, 96 S.W.3d at 267 n.9. Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *C.H.*, 89 S.W.3d at 28.

The first *Holley* factor involves the desires of the child. Being only about sixteen months old, Brie was too young to verbalize her desires. However, Brie has been placed with her aunt, Kasey, since she was just a few days old. Rachel Pace, the Department caseworker, testified that Brie is "happy," "thriving, she's walking, and she's starting to talk," and is "extremely bonded with her caregivers, her two cousins [and her brother] that are in the home." According to Pace, Brie "doesn't know [Della]." Sarah Doke, the child's guardian ad litem, agreed that Brie has no bond with Della. Doke testified that Kasey's home is safe and stable and that Kasey and her husband place the needs of Brie and their other children above their own. From this evidence establishing that Brie is bonded to Kasey and her family and that Brie has had limited contact with Della during her lifetime, the trial court could infer that the child would prefer to remain in Kasey's stable, loving environment. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied). Therefore, this factor weighs in favor of termination.

As to the second, third, fourth, and eighth *Holley* factors, the evidence showed that Della could not meet Brie's emotional and physical needs, that her inability or unwillingness to protect the child from the present and future threat of domestic violence posed a danger to Brie, that she lacked appropriate parenting abilities, and that her relationship with her child may not be a proper one. Henry told multiple people that he frequently saw Brent hit Della and that Brent stranded them on the side of the road. Despite denying it when she was interviewed by the Department, at trial, Della admitted that Brent had hurt her while she was pregnant with Brie while Henry was in the home, and she told Veihl that Brent frequently stole her keys, took her truck, and hid her purse

13

in order to take away "any kind of lifeline that she had to use to contact somebody for her to get help."

In March 2016, while Della was at the obstetric clinic, Brent called the police, claiming that Della was suicidal and trying to harm the child. After the police arrived and determined that Della was not suicidal, Brent left her stranded at the clinic. Some time later, Brent "busted down the door" in their house, but Della refused to leave and enter a shelter because she did not want to leave her things behind.

Pace testified that on August 31, 2016, Brent "put [Della] out on the side of the road" and took her telephone, wallet, and shoes, and when Della appeared for a parent-child visit the following day, she was bruised and had large scratches across her neck and arms. Della stayed with a friend for a few days, but was back together with Brent within a week, as she drove Brent's truck to her visit with Henry and came with Brent for the visit with Brie. Just days later, after she and Brent came home from dinner, an argument ensued, and Brent choked her, slapped her, poked her in the face with his finger, tied her up with a telephone cord, and threatened that his "jokes about [the] wood chipper would become [her] reality." Brent was arrested the next day, but Della went to the jail and signed an affidavit of nonprosecution "trying to drop [the] charges."

Several witnesses testified that through the pendency of the case, Della refused to leave the violent and abusive relationship she had with Brent, despite being given "numerous opportunities by her family" and the Department. Despite Brent's history of abusing her and her son, Della testified that she should not have to leave Brent in order to have her children returned to her care. Frost, her counselor, testified that Della's inability "to accept her reality of being a domestic

14

violence victim" meant that "she's not able to protect herself." He continued, "If she's not able to protect herself, she cannot be protective of her children." Doke testified that Della would never "put the needs of her children above what [Brent] wants or above her stuff."

From this evidence, the jury could have found that Della could not meet Brie's present and future needs, that Della was unwilling or unable to protect the child from the dangers of domestic violence, that she lacked needed parenting skills, and that her relationship with Brie may not be a proper one. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (considering parent's history of irresponsible choices in best interest determination); *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (lack of parenting skills, income, and home and unstable lifestyle considered in determining parent's ability to provide for child's physical and emotional needs). Therefore, these factors weigh in favor of termination.

There were numerous programs available to assist Della. As detailed above, she failed to comply with court orders and her service plan. While she completed parenting classes, she failed to complete individual therapy despite being provided with several different counselors. Furthermore, Veihl testified that in continuing to return to Brent, Della had refused the Department's help "time and time again." As Della failed to take advantage of the programs and assistance available to her, the jury could have concluded that she would not seek out such assistance in the future to help herself or the child. *See Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.). Therefore, the fifth factor weighs in favor of termination.

Stability and permanence are paramount in the upbringing of a child. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). A fact-finder may consider the

consequences of its failure to terminate parental rights and that the best interest of the child may be served by termination so that adoption may occur rather than the impermanent foster care arrangement that would result if termination were to not occur. *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 358 (Tex. App.—Austin 1993, no pet.), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267. Here, the Department sought termination of Della's parental rights so that Brie's maternal aunt, Kasey, and her husband could adopt her. Having lived with Kasey since she was just a few days old, Brie has bonded with Kasey and her family, and she is "happy" and "thriving." Kasey testified that she and her husband were willing to adopt Brie if the parental rights of Della and Brent were terminated. Kasey already has managing conservatorship of Della's other child, Brie's brother, Henry, and an adoption would keep the siblings together.

Even though Della admitted that she had failed to obtain and maintain stable housing or employment, she said that she planned to either have Brie returned to her care or to retain some rights to her, as she did with Henry. Della indicated that her plans included getting a job and a vehicle, claiming that she was trying to get a loan to go back to school and that she had "looked for rent houses in other states." Viehl also testified that termination was in the child's best interests because Della does not have "a safe, stable home environment." Based on this evidence, the fact-finder could have found that Della's plans and expectations were purely speculative and unrealistic due to her lack of stability and that termination was in the child's best interest because it would bring stability and permanence. *See id.* at 356. Accordingly, these factors weigh in favor of termination.

16

As for the ninth factor, Della's primary excuse is that "[t]he evidence was overwhelming that [Brent] was the real reason that termination was being sought against both the mother and the father." However, she concedes that "[a]ll the evidence submitted to the trial court pointed to [her] being an abused woman who was unable to break herself away from an abusive man." The jury could have rejected this excuse and inferred that since Della was unwilling or unable to protect herself from Brent's violence, she would be similarly unwilling or unable to protect the child from it. Therefore, this factor weighs in favor of termination, and in light of the entire record, the jury could have found by clear and convincing evidence that terminating Della's parental rights to Brie was in the child's best interests. *See H.R.M.*, 209 S.W.3d at 109. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 1, 2017
Date Decided:       November 7, 2017

17