

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00037-CV

_____

IN THE INTEREST OF B.K. AND G.L., CHILDREN

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 17-0128

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

The Texas Department of Family and Protective Services (the Department) filed a petition to terminate Mother's parental rights to her children, three-year-old B.K. and one-year-old G.L. After a final hearing, the trial court terminated Mother's parental rights to both children after finding that: (1) she knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) she constructively abandoned the children, who had been in the permanent or temporary managing conservatorship of the Department for not less than six months, (4) she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of their removal from her under Chapter 262 of the Texas Family Code for abuse or neglect; (5) she used a controlled substance, as defined by Chapter 481, Texas Health and Safety Code, in a manner that endangered the children's health or safety, and either failed to complete a court-ordered substance abuse treatment program or continued to abuse a controlled substance after completion of such a program; and (6) termination of her parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. §161.001(b)(1)(D), (E), (N), (O), (P), (2) (West Supp. 2017).

On appeal, Mother argues that the evidence is legally and factually insufficient to support the trial court's findings that statutory grounds for terminating her parental rights existed and that termination of her parental rights was in the children's best interests. We conclude that sufficient

evidence supports both the trial court's finding under Ground O of Section 161.001(b)(1) and the best-interests finding. Consequently, we affirm the trial court's judgment.

## I. Sufficient Evidence Supports the Trial Court's Ground O Finding

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). Here, we determine whether the evidence is legally and factually sufficient to support the trial court's Ground O finding.

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

4

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *A.V.*, 113 S.W.3d at 361 (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

## B.      Evidence at the Final Hearing

At the start of the May 16, 2018, final hearing, the trial court took notice of its own file, including the Department's February 21, 2017, petition, which recited that it was filed under Chapter 262 of the Texas Family Code after the Department received reports that Mother was allegedly using methamphetamine while caring for B.K. and G.L. The trial court also noticed (1) its March 23, 2017, order, entered under Chapter 262, requiring Mother to comply "with each requirement set out in the Department's original, or any amended, service plan during the pendency of [the] suit,"[1] (2) its June 13, 2017, order adopting the Department's family service plan as an order of the court after finding that Mother had reviewed it, and (3) its December 8, 2017, order (a) finding that Mother had not demonstrated compliance with the family service plan and (b) reiterating that the Department's family service plan was an order of the trial court that required Mother's compliance.

---

[1]The March 23, 2017, order was entered after a hearing in accordance with Section 262.205 of the Texas Family Code. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 1150, § 22, 1999 Tex. Gen. Laws 4043, 4048, *repealed by* Act of May 28, 2017, 85th Leg., R.S., ch. 910, § 15, 2017 Tex. Sess. Law Serv. 3712, 3718 (West).

At the hearing, Mallory Waugh-Brown, the Department's supervisor, testified that B.K. and G.L. were removed from Mother's care after both Mother and G.L. tested positive for methamphetamine. After being appointed temporary managing conservator on March 23, 2017, the Department created a family service plan setting forth the actions necessary for Mother to regain conservatorship of the children. Among other things, the court-ordered family service plan, which Mother signed on April 20, 2017, required her to refrain from criminal activity, gain and maintain legal employment, complete a parenting class, maintain contact with the caseworker, complete a psychological evaluation and drug assessment, follow recommendations to complete drug counseling, and comply with random drug testing. Waugh-Brown testified that Mother did not complete any portion of the court-ordered family service plan, even though she had explained to Mother its requirements and the consequences of noncompliance.

Specifically, Waugh-Brown testified that Mother admitted to using methamphetamine several times during the pendency of the case. According to Waugh-Brown, Mother had not gained legal employment, failed to attend the parenting classes that were scheduled for her, failed to maintain regular contact with her caseworker, did not complete a psychological evaluation, and refused to meet with a substance-abuse counselor after being referred to him for treatment. Waugh-Brown also stated that Mother attended an initial appointment for admittance into a drug rehabilitation program, but relapsed before she was admitted, that she missed ten drug tests spanning from February 2017 until January 2018, and that "[a]ll drug tests that she did take were positive for methamphetamine." Waugh-Brown, who personally witnessed Mother under the influence of methamphetamine, testified that Mother was intoxicated during a May 31, 2017,

6

planned visitation with her children, and that she "missed the majority of her visits" with them. Waugh-Brown informed the trial court that, in late January 2018, Mother had been arrested on charges of murder and tampering with evidence and had remained in jail since her arrest.

### C. Analysis

Under Ground O, the Department was required to prove that Mother

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Here, the appellate record established that B.K. and G.L. were removed from Mother under Chapter 262 for abuse or neglect and that they were in the temporary managing conservatorship of the Department for well over a year before the final hearing.[2] Further, the trial court ordered Mother to comply with each and every requirement of the Department's family service plan, which it had adopted as its own order. Neither the trial court's orders nor Ground O of Section 161.001(b)(1) "'make[s] a provision for excuses' for the parent's failure to comply" with the family service plan. *In re B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.) (quoting *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.)).

---

[2]"If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been 'remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child.'" *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(O)).

7

We find that Waugh-Brown's testimony established, by clear and convincing evidence, that, prior to her January 2018 incarceration, Mother had ample opportunity, but failed, to comply with virtually every provision of the court-ordered family service plan. Accordingly, we find the evidence both legally and factually sufficient to support the trial court's Ground O finding. We overrule Mother's first point of error.

## II.     Sufficient Evidence Supports the Trial Court's Best-Interests Finding

In her last point of error, Mother argues that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interests.

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2017). Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *C.H.*, 89 S.W.3d at 28.

B.K. and G.L. were both too young to express their desires, leading us to conclude that the first *Holley* factor is neutral.

Next, Mother's drug use had ultimately led to the removal of B.K. and G.L. from her care. Mother had exposed G.L. to methamphetamine, causing the child to test positive for the drug. According to Waugh-Brown, Mother continued to use methamphetamine during the pendency of the case, arrived intoxicated to a visitation with her children in May 2017, and missed many other visits with them. Waugh-Brown testified that Mother's drug use endangered B.K. and G.L. Waugh-Brown also testified that Mother had no legal employment, no stable home, and had not completed parenting classes. She added that the children had not seen a doctor regularly while in Mother's care and were behind on their scheduled immunizations.

Because "[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct," the trial court was free to find that Mother would likely continue to abuse drugs and neglect her children. *O.R.F.*, 417 S.W.3d at 39 (quoting *In re A.M.*, 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied)). Further, "[a] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at *17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.).

Based on the evidence in this case, we find that the second, third, fourth, and eighth *Holley* factors weigh in favor of termination of Mother's parental rights.

As to the fifth and ninth *Holley* factors, the Department had programs available to assist Mother, but she did not take advantage of any of those programs. Mother fled from a substance abuse counselor, relapsed after an initial intake appointment for a drug rehabilitation program, failed to complete parenting classes she was enrolled in, did not undertake the required psychological evaluation, and missed many supervised visits with her children. Although Waugh-Brown suggested that Mother did not have transportation of her own, there was no testimony suggesting that Mother was unable to attend the services and appointments arranged by the Department for that reason. The trial court noted that, although she was incarcerated in late January 2018, she had ample time before her arrest to complete the family service plan. We find that the fifth and ninth *Holley* factors weigh in favor of termination of parental rights.

As for the sixth and seventh factors, there was no evidence presented suggesting that Mother had any plan for the children or place for them to live. She was then incarcerated on charges of murder and tampering with evidence. In contrast, the Department signed a mediated settlement agreement with the respective fathers of each child that provided for each father to be the sole managing conservator of his child.[3] Waugh-Brown testified that it was in the children's best interests for Mother's parental rights to be terminated and for each child's father to be

---

[3]The mediated settlement agreement contained in the clerk's record was not signed by Mother or her attorney, and there is no evidence of her assent to it.

10

appointed as sole managing conservator. We find that the sixth and seventh *Holley* factors weigh in favor of termination of parental rights.

Considering the *Holley* factors, and in light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in the best interests of B.K. and G.L. We conclude that the evidence was both legally and factually sufficient to support the trial court's best-interest finding.

## III. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    August 15, 2018
Date Decided:    August 16, 2018