

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00052-CV

_____

IN THE INTEREST OF J.R.H., JR., H.H., AND B.T., CHILDREN

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. CV42794

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

On the petition of the Texas Department of Family and Protective Services, Charles' parental rights to B.T.[1] were terminated on multiple statutory grounds.[2] On appeal, Charles challenges the legal and factual sufficiency of the evidence to support the various findings of the statutory grounds for termination[3] and the best-interest[4] finding. Because legally and factually sufficient evidence supports at least statutory ground (O) and the best-interest finding for terminating Charles' parental rights, we affirm the judgment of the trial court.

The termination of Charles' parental rights to B.T.—Charles' only child involved in these related proceedings—occurred at the same time as the termination of Heidi's parental rights to B.T., as well as her rights to J.R.H., Jr., and H.H., Heidi's children by another man. The Department's actions against Charles and Heidi were precipitated by Heidi's assault on her own grandmother, which followed on the heels of the Department's seven-year, off-and-on involvement with Heidi and Charles.

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). It is a fundamental right of parents to make decisions concerning "the care, custody, and control of their children." *Troxel v.*

---

[1]In this opinion, we will refer to the minor children by their initials and to their family members by pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

[2]The trial court found that the grounds set forth in subsections (D), (E), (I), and (O) of Section 161.001(b)(1) supported termination of Charles' parental rights. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (I), (O) (West Supp. 2018).

[3]*See* TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018).

[4]*See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018).

*Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). Therefore, we are required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

To terminate parental rights of any parent, the trial court must find, by clear and convincing evidence, that the parent has committed at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our legal-sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have

3

reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our factual-sufficiency review, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

4

*(1)    Sufficient Evidence Supports the Finding that Ground (O) Supports Termination of Charles' Parental Rights*

"Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a [sustainable] finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *A.V.*, 113 S.W.3d at 362); *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). Assuming a valid best-interest finding, when the trial court finds more than one predicate ground for termination, we will affirm if any one ground is supported by sufficient evidence. *K.W.*, 335 S.W.3d at 769.

At trial, the evidence showed there were also multiple interventions by the Department into Heidi's and Charles' family in 2011, 2014, and 2015 that addressed substance abuse, lack of cleanliness of the children, the lack of substantial housing, domestic violence, and repeated arrests of one or the other parent. In 2011 and 2015, the Department provided family services, mental health counseling, and parenting classes to both Heidi and Charles, which were completed, but they kept having new issues. The 2011 intervention resulted from B.T.'s positive test for marihuana when she was born. At that time, Charles was living with the family and admitted using marihuana. Heidi also admitted using marihuana during her pregnancy.

In 2015, a new case was opened for neglectful supervision because Heidi left the children in the care of her parents, who had previously had their children removed and their parental rights terminated. At that time, Heidi and Charles were living at the Ferrari Inn in Sulphur Springs, and both were offered services. Charles refused the services. That case was closed in 2016, after Heidi had completed her services and had negative tests for substance use.

When the instant case began, Charles was still residing at the Ferrari Inn, and Heidi and the children were living with Heidi's grandmother.[5] The Department was called after Heidi had been arrested for family violence assault against her grandmother and the police had found drug paraphernalia in the house. When the older two children were interviewed, they revealed that they had seen Heidi and her boyfriend use K-2.[6] They described how their mother, after using K-2, was dizzy, fell down, and got angry. This occurred just before Heidi's assault on her grandmother. As a result, the children were removed from the home, a decision that was affirmed under an emergency order that found there was an immediate danger to their physical health or safety as a result of neglect.[7]

On May 3, 2017, after an adversary hearing, the trial court entered temporary orders in which it listed the actions required of Charles necessary to obtain the return of his child. The order required Charles to do a number of things, including submitting to and cooperating fully in a psychological evaluation; attending and cooperating fully in counseling sessions until the

---

[5]When this case began, Charles had not resided with the family for eight months.

[6]K-2 is a synthetic marihuana.

[7]*See* TEX. FAM. CODE ANN. §§ 262.104, 262.106 (West Supp. 2018).

counselor determined that no further sessions were necessary; attending, participating in, and successfully completing parenting classes; submitting and cooperating fully in a drug and alcohol dependency assessment; submitting urine, saliva, or hair-follicle samples as directed by the Department for drug testing; and complying with each requirement set out in the Department's original or amended service plan.

Five days after the adversary hearing, the Department held a family group conference with Heidi, Charles, the children, Department personnel, and Court Appointed Special Advocates (CASA) representatives, and a family service plan was formulated. The family service plan, in addition to requiring the actions set out in the trial court's order, required Charles to obtain and maintain stable employment for six to twelve months before dismissal of the case, to provide the Department with copies of any and all pay stubs each month, to participate in visitation with the child and abide by the Department's rules of visitation, to maintain stable and appropriate housing, to attend conflict resolution group counseling, and to take other actions.

Tina Nichols, a Department caseworker, testified that Charles was argumentative and uncooperative at the family conference and that he refused to sign his family service plan document after she went over it with him. She also testified that Charles always told her he did not see why he had to complete any services because he was not the offending parent. She testified that she had not been to the Ferrari Inn where Charles lived, because he had called and threatened everyone involved in the case. Charles was informed that he would need to find different housing to be

7

reunified with B.T.,[8] and he said that he and his mother had been looking for housing, but that money was an issue.

Although Charles claimed that he had been working, he never provided Nichols with any pay stubs to verify his employment. In addition, the CASA volunteer assigned to this case testified that she checked with the putative employer every time Charles claimed he had a job or a job interview, and it was never true. Charles admitted that the Department had worked with him for over a year to get a job and a place where B.T. could visit, but that he would not do it.

Although a visitation schedule was initially set up, Charles cancelled a few, citing a lack of transportation. In addition, Charles left several of his visits early, claiming that he had to go to work.[9] The CASA worker followed up with the employer and discovered that this was not true. The testimony showed that, when he did attend visitation, Charles violated the Department's rules by telling B.T. that he was going to beat the Department at its own game and noting how he would do it, and that, since Sadie,[10] with whom B.T. was placed, was not her grandmother, she did not need to listen to her or to obey her. After these visits by Charles, B.T. stopped trying in school, her grades went from A's to F's, she started lying and stealing, and her counselor became concerned about continuing the visitation.

Nine months into the case, Charles had not completed any of the actions required of him,

---

[8]The testimony at trial showed that the Ferrari Inn, where Charles resided, was not a safe place to raise a child because of the high incidence of drug use, domestic violence, and sex trafficking that occurred there daily.

[9]Initially, Charles claimed that the Department's witness lied about him leaving visits early, but ultimately admitted that he did leave early on at least two occasions.

[10]B.T., along with J.R.H., Jr., and H.H., were placed with J.R.H., Jr.'s, and H.H.'s paternal great grandmother, Sadie.

except for having a psychological assessment and an alcohol and drug assessment, and had not changed his housing. Because of Charles's non-compliance with the family service plan, his visitation with B.T. was suspended by the trial court on January 19, 2018. Once visitation was suspended, B.T. stopped lying and stealing and brought her grades up in school.

At the time of trial, Charles had completed both his parenting classes and his anger management classes. However, Charles did not complete his parenting classes until over a year after the case began[11] and after the original setting for the final hearing. He did not complete his anger management classes until two months later.

> Statutory ground (O) provides that parental rights may be terminated if the parent has
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Initially, Charles argues that ground (O) is not applicable to him because B.T.'s removal was not due to abuse or neglect by him,[12] but rather due to Heidi's actions. He reasons that, since he was not the offending parent, his parental rights cannot be terminated under ground (O). Charles does not cite any authority in support of his argument. To the contrary, several of our sister courts of appeals have rejected similar arguments and held that ground (O) will support the termination of the non-offending parent's parental rights. *See*

---

[11]The case was extended for 180 days by order dated April 2, 2018. *See* TEX. FAM. CODE ANN. § 263.401(b) (West Supp. 2018).

[12]Charles does not dispute that B.T. was removed because of abuse or neglect. Rather, he argues that the abuse or neglect was not attributable to him.

*In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.); *In re M.N.*, No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex. App.—Eastland Mar. 17, 2011, no pet.) (mem. op.); *In re S.N.*, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (op. on reh'g). We agree with our sister courts that ground (O) does not require that the parent who failed to comply with the court order be the same parent whose abuse or neglect triggered the child's removal. *D.R.J.*, 395 S.W.3d at 320; *M.N.*, 2011 WL 917837, at *3; *S.N.*, 287 S.W.3d at 188.

In his challenge to the sufficiency of the evidence supporting the finding that he failed to comply with the court's order, Charles points to the evidence that he completed some of the requirements of the family service plan and that there is conflicting evidence regarding whether he complied with other provisions. However, partial compliance with a court-ordered service plan is insufficient under ground (O). *J.F.C.*, 96 S.W.3d at 278; *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "Ground O does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated." *In re B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.). Further, when there is disputed evidence, we presume that the trial court, as fact-finder, resolved the conflict in favor of its finding if it could reasonably do so. *J.P.B.*, 180 S.W.3d at 573. In this case, the evidence showed that Charles completed only part of the requirements under the family service plan and that both his parenting classes and anger management classes were not completed until over one year after the case began. Charles offered no explanation for the delay in completing these requirements. Further, sufficient evidence supported the conclusion that Charles did not comply with the visitation requirements, that he was suspended from his

10

visitation for his lack of compliance with the court's order, that he did not obtain and maintain stable employment during the pendency of the case, and that he made little effort to obtain appropriate and safe housing. These are significant deficiencies. *B.H.R.*, 535 S.W.3d at 122.

Considering the entire record, we find that a reasonable fact-finder could have formed a firm belief or conviction as to the truth of the finding under ground (O). *See J.F.C.*, 96 S.W.3d at 266. Also, we find that the disputed evidence that the fact-finder could not have credited in favor of its finding under ground (O) is not so significant that it could not have reasonably formed a firm belief or conviction as to the truth of its finding under that ground. *See id.* Therefore, the evidence is legally and factually sufficient to support the trial court's finding under ground (O). We overrule this issue.

*(2)*      *Sufficient Evidence Supports the Finding that Termination of Charles' Parental Rights Was in the Best Interest of B.T.*

Charles also challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that termination of his parental rights is in the best interest of B.T. In this connection, Charles argues only that, since he passed all of his drug tests and since the evidence showed his last drug use was at least two years before the trial, there is insufficient evidence supporting the best-interest finding. We disagree.

Termination of the parent-child relationship requires that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2). "There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without

11

the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). It is not sufficient to merely show that the child might be better off living elsewhere with more prosperous parents. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.); *see In re A.L.D.H.*, 373 S.W.3d 187, 194 (Tex. App.—Amarillo 2012, pet. denied). In our best-interest analysis, we focus on the best interest of the child, not the best interest of the parent. *B.H.R.*, 535 S.W.3d at 122 (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)).

To determine the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*N.L.D.*, 412 S.W.3d at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2018). "A parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment may be considered when looking at the child's best interest." *B.H.R.*, 535 S.W.3d at 123 (citing *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). In certain cases, evidence relating to one factor may be adequate to support a finding that termination is in the best interest of the child. *Id.* (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *overruled on other grounds by J.F.C.*, 96 S.W.3d at

12

267 n.9. Further, evidence used to support the grounds for termination of parental rights may be considered in the best-interest analysis. *Id.* (citing *C.H.*, 89 S.W.3d at 28).

The CASA volunteer testified that B.T., who was seven years old at the time of trial, is very scared of being separated from her brothers. Further, B.T.'s attorney ad litem advised the trial court that she wants to be adopted by Sadie. In addition, testimony showed that B.T. is very bonded to her brothers and that she enjoys being in Sadie's home, which is safe, stable, and drug-free, and where she has her own bedroom. Even if B.T. was not old enough to express her desires, the trial court could infer that she would prefer to remain in Sadie's stable, loving environment. *B.H.R.*, 535 S.W.3d at 123 (citing *In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied)). Therefore, we find the first *Holley* factor weighs in favor of termination.

The evidence showed that Charles' visits with B.T. had a negative impact on her performance in school and her moral behavior. There was also evidence that, when Charles' visits stopped, B.T.'s school performance and her moral behavior were impacted positively. Also, the evidence showed that Charles had made little effort to secure employment that would enable him to provide adequately for B.T. and made little effort to secure a safe, stable home for her. Although he eventually completed his parenting and anger management classes, the only thing he could express that he learned from them was that words matter and he should be humble. The totality of the evidence supports a conclusion that Charles lacked the requisite parenting skills to provide for the emotional and physical needs of B.T. *See J.O.A.*, 283 S.W.3d at 346 (considering parent's history of irresponsible choices in best-interest determination); *C.A.J.*, 122 S.W.3d at 893 (lack of

13

parenting skills, income, and home and unstable lifestyle considered in determining parent's ability to provide for child's physical and emotional needs).

Sadie has paid for counseling for the children with her own funds. Nichols testified that it would be disruptive for B.T. to be removed from her brothers and from Sadie's home. We find that this evidence weighs in favor of termination under the second, third, fourth, seventh, and eighth *Holley* factors.

The Department's plans for B.T. called for keeping her with her brothers and having her adopted by Sadie, who has taken the necessary steps to be able to adopt the children. The testimony showed that, in taking these steps, Sadie had made both personal and financial sacrifices to meet the needs of the children. Charles' plans were for B.T. to live at the Ferrari Inn, where he would rent an extra room so she could have her own room. Charles also told the CASA volunteer that he had no intention of taking care of B.T., but that his mother would. The sixth *Holley* factor weighs in favor of termination.

In light of the entire record, we find that a reasonable fact-finder could have formed a firm belief or conviction that termination of Charles' parental rights was in B.T.'s best interest. *See J.F.C.*, 96 S.W.3d at 266. Further, the disputed evidence that the fact-finder could not have credited in favor of its best-interest finding is not so significant that the fact-finder could not have reasonably formed a firm belief or conviction that termination of Charles' parental rights was in B.T.'s best interest. *See id.* The evidence is legally and factually sufficient to support the trial court's best-interest finding. We overrule this issue.

14

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     December 4, 2018
Date Decided:       December 19, 2018