# NO. 12-18-00212-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF J.S.,* | *§* | *APPEAL FROM THE* |
| *M.S., M.S., M.S., AND J.S.,* | *§* | *COUNTY COURT AT LAW* |
| *CHILDREN* | *§* | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

S.S. and D.S. appeal the termination of their parental rights. In four issues, they challenge the sufficiency of the evidence to support the termination order. We affirm.

### BACKGROUND

S.S. is the mother of J.S., M.S., M.S.1, M.S.2, and J.S.1.[1] D.S. is the father of M.S., M.S.1, M.S.2, and J.S.1. On July 18, 2018, the Department of Family and Protective Services (the Department) filed a first amended original petition for protection of children, for conservatorship, and for termination of S.S.'s and D.S.'s parental rights. The Department was appointed temporary managing conservator of the children, and D.S. and S.S. were granted limited access to the children.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that the parent-child relationship between S.S., J.S., M.S., M.S.1, M.S.2, and J.S.1 should be terminated and that the parent-child relationship between D.S., M.S., M.S.1, M.S.2, and J.S.1 should be terminated. Thus, the trial court found, by clear and convincing evidence, that S.S. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (O), and (P) of Texas Family Code Section 161.001(b)(1). The

---

[1] Because the children have the same initials, we will reference the younger children as M.S.1, M.S.2, and J.S.1.

trial court also found that termination of the parent-child relationship between S.S., J.S., M.S., M.S.1, M.S.2, and J.S.1 is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between S.S., J.S., M.S., M.S.1, M.S.2, and J.S.1 be terminated.

Further, the trial court found, by clear and convincing evidence, that D.S. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (O), and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between D.S., M.S., M.S.1, M.S.2, and J.S.1 is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between D.S., M.S., M.S.1, M.S.2, and J.S.1 be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27–29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(b)(1)

In their four issues, S.S. and D.S. argue the evidence is legally and factually insufficient to terminate their parental rights pursuant to Texas Family Code Section 161.001(b)(1)(D), (E), (O), and (P).

## Applicable Law

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2018). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded the risk. *In re N.R.*, 101, S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id.*

The court may also order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2018). Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well-being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It necessarily follows that the endangering conduct may include the parent's actions before the child's birth and while the parent had custody of older children. *See id.* (stating that although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent's conduct be directed at the child or that the child actually suffers injury); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d at 811. It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Domestic violence may be considered evidence of endangerment. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent engaged in a course of conduct which has the effect of endangering the child. *See, e.g.*, *In re C.R.*, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); *In re M.R.*, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The court may also order termination if the court finds, by clear and convincing evidence, that the parents failed to comply with the provisions of a court order that specifically establishes the actions necessary for them to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2018). Subsection (O) does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated or the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the plan. *See id*.; *In Interest of B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.). Neither the statute nor the order which was entered prescribes the degree to which the parent must comply with the court order, and neither the order nor the statute "make[s] a provision for excuses" for the parent's failure to comply with such an order. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *In re J.S.,* 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied), *overruled on other grounds by In re A.M.*, 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, no pet.)).

## Analysis

At trial, the evidence showed that the Department became involved when it received an allegation of neglect and abuse regarding the children. An investigator met with D.S. and S.S. at a Tyler hospital. S.S. had given birth to a child in her home the previous day and was transported to the hospital. The newborn died shortly after delivery. Brittany Mannes, the investigator, testified that the Department received allegations that the children were not being watched or cared for while the family was at the hospital. When Mannes arrived, she found the entire family in the

6

hospital room. D.S. was asleep in a chair, the children were playing, and M.S. had a bruise under her eye. The room smelled like dirty diapers and the children were not wearing clean clothing.

Mannes spoke with both D.S. and S.S. before leaving the hospital. S.S. admitted to Mannes that she took Norco, without a prescription, and methamphetamine during her pregnancy.[2] D.S. also told Mannes that he took Norco and methamphetamine. He admitted having a history with marijuana, but claimed to no longer use marijuana since having the children. He claimed to get the Norco from his customers at the donut shop. D.S. further admitted to leaving the children at home and attending a party with S.S. where they snorted cocaine. According to D.S., he previously obtained drugs from people who lived with them. Following positive drug tests by the parents, the Department tested the children for drugs. J.S., M.S., M.S.2, and J.S.1 tested positive for methamphetamine.

Mannes testified that the family lived with a couple named Vicki Mau and James Phillips at the time of removal. During her investigation, Mannes learned that Phillips was a registered sex offender and that the children were left in the couple's care on multiple occasions. S.S. admitted to Mannes that the couple does "illegal things and are always hiding," but she continued residing in the home because she had no proof. Mannes further testified that D.S. has a criminal history, including two convictions for assault causing bodily injury to a family member.

Mannes further testified that the children were home alone when she arrived to remove them. At that time, J.S.1 was less than one year old. M.S. also had fingernail claw marks on her legs. When asked, M.S. told investigators that her mother squeezed her legs and made the claw marks. Mannes testified that the marks were deeper than a typical scratch and had begun scarring. The children also indicated that D.S. would sometimes hit them.

Jessica Walker, a caseworker for the Department, testified regarding D.S.'s and S.S.'s failure to comply with their court-ordered service plans. After their children entered the Department's care, D.S. and S.S. were required to, in pertinent part, (1) attend and participate in random drug screenings, (2) complete a drug and alcohol assessment, (3) attend and participate in substance abuse counseling, (4) participate in a psychological evaluation, (5) participate in and complete parenting classes, (6) disclose the names of individuals living in the home, (7) obtain and maintain stable housing for a period of at least six months, and (8) obtain and maintain employment

---

[2] Norco, a combination of hydrocodone and acetaminophen, is a prescription pain reliever and is classified as an opioid.

for at least six months. Mannes testified that, based on her review of the case file, both D.S. and S.S. refused to comply with several requested drug tests. The Department never received employment verification from either D.S. or S.S. At the time of trial, S.S. had moved to Kansas and was living with some family. However, the identities of the individuals in the home were unknown to the Department. The Department was informed that a psychological evaluation was completed in Kansas; however, Mannes testified that the results have not been received. D.S. was arrested in June 2017 and remains incarcerated. Mannes testified that the Department attempted to facilitate D.S.'s compliance with the service plan during his incarceration. However, he has not completed a psychological evaluation, parenting classes, or substance abuse counseling.

D.S. did not testify at trial. S.S. testified that she does not use drugs around her children and that she does not know why they tested positive for drugs. She admitted to using drugs at a party before Christmas 2016. She testified that she believed the drug was "coke" but she "didn't think it was meth." While she and D.S. were at the party, the children were with Mau and Phillips. According to S.S., she did not know Phillips was a registered sex offender until after the children were removed. She also admitted to taking an unprescribed opioid during her pregnancy. S.S. was drug tested during the trial and the test was positive for opioids. S.S. stated that she suffers from hip pain and that she takes pain medication as a result. S.S. claimed to have a prescription; however, she was unable to produce it at trial. She further testified that she is currently unemployed and living with her parents in Kansas. S.S. testified that the house and bills are listed in her name but her brother currently pays the bills.

From this evidence, a reasonable fact finder could have determined that S.S. and D.S. have a history of drug abuse, from which they failed to protect their children, and S.S. physically abused M.S. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). A reasonable fact finder could also conclude that D.S. and S.S. exposed their children to illegal drugs and placed them in a home in which they were left alone with and compelled to associate with persons engaged in unlawful activities. *See id.* Further, the fact finder could have formed a firm belief or conviction that S.S. and D.S. were unable to adequately care for the children because they were unable to establish a safe and stable environment. The evidence also shows that D.S. and S.S. failed to comply with the requirements of their court-ordered service plans. *See id.* § 161.001(b)(1)(O).

Therefore, we hold that the evidence, viewed in the light most favorable to the findings, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief

or conviction that D.S. and S.S. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See **In re J.F.C.***, 96 S.W.3d at 266; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Furthermore, we hold that the trial court's determination that D.S. and S.S. failed to comply with the requirements of the service plan is supported by legally and factually sufficient evidence. *See **Interest of B.H.R.***, 535 S.W.3d at 122; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Because the evidence is legally and factually sufficient to support termination of D.S.'s and S.S.'s parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1), we overrule their first, second, and third issues and need not address their fourth issue regarding subsection (P).[3] *See* TEX. R. APP. P. 47.1; *see also **In re E.M.N.***, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).

## DISPOSITION

Having overruled S.S. and D.S.'s first, second, and third issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 16, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[3] D.S. and S.S. do not challenge the trial court's finding that termination is in the children's best interest.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 16, 2019**

**NO. 12-18-00212-CV**

**IN THE INTEREST OF J.S., M.S.,
M.S., M.S., AND J.S., CHILDREN**

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. CCL-17-15370)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*