# NO. 12-24-00214-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 273RD* |
| *O.S.G., O.N.V. AND O.H.V.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *SAN AUGUSTINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.G. appeals the termination of her parental rights to the children O.S.G., O.N.V., and O.H.V. In three issues, she asserts that res judication bars termination of her parental rights and challenges the sufficiency of the evidence. We modify the judgment of the trial court and affirm as modified.

## BACKGROUND

J.G. (hereafter Mother) is the mother of O.S.G., O.N.V., and O.H.V. The Department of Family and Protective Services' (the Department) involvement with the family originally arose from O.N.V. and O.H.V. testing positive for marijuana at birth. Mother admitted to using marijuana while pregnant, and the case was subsequently referred to Family Based Safety Services (FBSS) in an effort to keep the family intact. On July 29, 2021, the Department filed an original petition for the protection of O.S.G., O.N.V., and O.H.V., for conservatorship, and for termination of Mother's parental rights. On December 16, 2022, the court entered a Final Order in Suit Affecting Parent-Child Relationship, in which the Department was appointed permanent managing conservator of all three children, with Mother named as a possessory conservator; Mother's parental rights were not terminated. On May 8, 2023, the Department filed its Original

Petition to Modify Prior Order in Suit Affecting the Parent-Child Relationship. Thereafter, the children's foster parents filed a petition in intervention in the suit, with the intent to petition to adopt the children post-termination.

At the conclusion of a bench trial, the Associate Judge found, by clear and convincing evidence, that Mother engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The Associate Judge also found that termination of the parent-child relationship between Mother and O.S.G., O.N.V., and O.H.V. was in the children's best interest. Based on these findings, the Associate Judge ordered that the parent-child relationship between Mother and the children be terminated. The Associate Judge's order was thereafter adopted as an order of the court. This Court initially dismissed Mother's subsequent appeal for want of prosecution but reinstated same upon Mother's motion. *See Int. of O.S.G.*, No. 12-24-00214-CV, 2024 WL 3858470, at \*1 (Tex. App.—Tyler Aug. 15, 2024, no pet.) (mem. op.) (per curiam).

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." *Vela*, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West 2023). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id.* § 161.001(b)(1), (2). Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001(b);

***Wiley***, 543 S.W.2d at 352. The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2023). The party seeking termination of parental rights bears the burden of proof. ***In re J.F.C.***, 96 S.W.3d at 256, 294 (Tex. 2002).

## STANDARD OF REVIEW

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." ***In re J.F.C.***, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. ***Id.*** If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. ***Id.*** The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. ***Nordstrom v. Nordstrom***, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. ***In re C.H.***, 89 S.W. 3d 17, 25 (Tex. 2002). We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. ***In re J.F.C.***, 96 S.W. 3d at 266. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. ***Id.***

Mother argues in her first issue that the trial court was barred by the doctrine of *res judicata* from terminating her parental rights based on Section 161.004 of the Texas Family Code because there had been no material and substantial change in circumstances since the issuance of the Final Order of December 16, 2022 (which denied termination of Mother's parental rights). Specifically, Mother argues that the modification and termination could not have been based on her continued failure to comply with the Family Plan of Service, because the evidence showed she "substantially" complied with same, or that there was a "reasonable explanation" as to why she failed to complete certain tasks.

When, as here, the Department seeks termination after a trial court's prior denial of termination, the trial court may terminate parental rights by following the familiar procedure under Section 161.001 of the Family Code, or the court may terminate parental rights under Section 161.004. *In re K.G.*, 350 S.W.3d 338, 345–52 (Tex. App.—Fort Worth 2011, pet. denied); *In Int. of A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "[A] trial court can terminate the parent-child relationship, even though it previously denied termination in another order, using section 161.001 alone if termination is sought on *evidence of acts or omissions having occurred since the earlier order in which termination was denied*." *In re D.N.*, 405 S.W.3d 863, 870 (Tex. App.—Amarillo 2013, no pet.) (emphasis in original); *see also Int. of A.L.H.*, 515 S.W.3d at 89 (termination in subsequent proceeding under Section 161.001 "requires clear and convincing evidence of acts or omissions having occurred since the denial."). Section 161.004 provides an alternative method for termination following the rendition of an order that previously denied termination if (1) termination is in the child's best interest, (2) the new petition to terminate was filed after the date of the prior order denying termination, (3) the parent committed an act listed under Section 161.001 before the date of the prior order denying termination, and (4) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order have "materially and substantially changed" since the date of the order. TEX. FAM. CODE ANN. § 161.004(a) (West 2023). "There are no definite guidelines as to what constitutes a material and substantial change in circumstances under [Section] 161.004." *In re N.R.T.*, 338 S.W.3d 667, 679 (Tex. App.—Amarillo 2011, no pet.). Instead, courts make this determination based on the facts of each case. *Id.* A material and substantial change in circumstances may be established by either direct or

circumstantial evidence. ***In re A.L.E.***, 279 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Additionally, at a hearing under Section 161.004, "the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child." TEX. FAM. CODE ANN. § 161.004(b).

In this case, the Original Petition to Modify sought termination of Mother's parental rights pursuant to both Section 161.001 and Section 161.004, although it does not expressly cite to Section 161.004. *See **In re A.A.M.***, 464 S.W.3d 421, 424 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (trial court could properly consider evidence of conduct occurring before prior order where Department did not expressly name Section 161.004 but pleaded the statutory elements thereof). However, the Order of Termination cites only Section 161.001 as the basis for ordering the termination of Mother's parental rights and makes no findings as to the elements of Section 161.004; therefore, the "material and substantial change" requirement of Section 161.004 is not applicable to this proceeding. *See **In re S.M.R.**,* 434 S.W.3d 576, 581 (Tex. 2014) ("[T]ermination can only be upheld on a ground that was both pleaded by the party seeking termination and found by the trier of fact."). Consequently, we confine our review to the sufficiency of the evidence to support the termination of Mother's parental rights under Section 161.001.

Because *res judication* does not bar the termination of J.G.'s parental rights, we overrule Mother's first issue, and we examine the sufficiency of the evidence.

## TERMINATION UNDER § 161.001(B)(1)(D), (E), AND (O)

In her second issue, Mother contends that the evidence is legally and factually insufficient to support the trial court's predicate findings that her parental rights to O.S.G., O.N.V., and O.H.V. should be terminated pursuant to subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1).

### Section 161.001(b)(1)(D)

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (D) addresses the child's

surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child's removal. *Int. of E.A.R.*, 583 S.W.3d 898, 908 (Tex. App.—El Paso 2019, pet. denied) (citing *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.)). Further, subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied). When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. *In re N.R.*, 101 S.W.3d at 776; *Ybarra*, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. *Ybarra*, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. *In re N.R.*, 101 S.W.3d at 776. In other words, conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Interest of R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024).[1] We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id.*

As explained *infra*, termination of parental rights under Section 161.001 following a trial court's previous denial of termination requires that the trial court find clear and convincing evidence of acts or omissions supporting termination having occurred *since the denial*. *Int. of A.L.H.*, 515 S.W.3d at 89. However, the relevant time period for a finding of endangerment under Section 161.001(1)(D) is *before removal*. *Int. of E.A.R.*, 583 S.W.3d at 908. In this case, the record indicates that since the children were removed by the Department, they have been in the care of a foster family and never returned to live with Mother. The record therefore contains

---

[1] "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.).

no "new" evidence, not previously presented to the trial court, that would support a finding that subsection (D) supported termination of Mother's parental rights. We sustain this portion of Mother's second issue.

**Section 161.001(b)(1)(E)**

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional wellbeing is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Endangering conduct is not limited to actions directed towards the child but may include the parent's actions before the child's birth and while the parent had custody of older children. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur before the child's birth and both before and after the child's removal by the Department. *Walker v. Tex. Dep't of Family & Protective Srvs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It is further not necessary that the endangering conduct causes the child to actually suffer injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent engaged in a course of conduct which has the effect of endangering the child. *See, e.g., In re C.R.*, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); *In re M.R.*, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Gabriell Arndt, the case manager employed by the Texas Family Care Network (through its contract with the Department), testified at trial that Mother has a pattern of "consistent positives for marijuana use" in her drug test results. Arndt explained the importance of a parent having a "clear head," in order to ensure the safety of her children, especially young children like those in this case (the oldest of Mother's children was five years old at the time of trial). The trial court received into evidence the results of Mother's drug screenings from January, March, June, August, October, and December of 2023, as well as two screenings from January 2024 and one from February 2024, all of which were positive for marijuana. Mother testified at trial that she knew, since the beginning of the Department's involvement in this case, that she was not supposed to use marijuana (because it is illegal and against the court-ordered service plan). She could not provide a reason why she continued using despite this knowledge but testified that she did not believe it caused a safety issue, because no safety-related incidents occurred to date, and she only used when someone else was watching the children or while they were asleep.

A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d at 739. Moreover, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy constitutes conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See Interest of S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied); *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under subsection (E). *Walker*, 312 S.W.3d at 617-18. Additionally, Arndt testified that Mother failed to complete required drug screenings in April, May, and July of 2023. A factfinder may reasonably infer from a parent's refusal to complete scheduled drug screenings that the parent is avoiding screening because she is using drugs. *Interest of E.A.R.*, 672 S.W.3d 716, 723 (Tex. App.—San Antonio 2023, pet. denied) (citing *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.)). And the trial court was entitled to disregard Mother's testimony. *See In re S.A.H.*, 420 S.W.3d 911, 927 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("As the finder of fact and sole judge of the credibility of the witnesses, the trial court was free to disregard any or all of the parents' self-serving testimony.").

Moreover, Mother testified that she and R.G., the biological father of O.N.V. and O.H.V. (hereafter Father) were romantically involved "on and off," but they intended to live together for the foreseeable future (with the children, should they be returned).[2]  Arndt testified that Father completed an outpatient rehabilitation program in January 2023, but continued to test positive for substances thereafter. Father last tested positive in August of 2023, with all subsequent tests being negative, but he failed to report for drug testing five times between August 2023 and the time of trial.  *See Interest of E.A.R.*, 672 S.W.3d at 723.  The trial court received into evidence the results of Father's drug screenings from March, June, and August 2023, which were all positive for methamphetamine.

From the above evidence, a reasonable factfinder could have formed a firm belief or conviction that, following the denial of termination in December 2022, Mother voluntarily engaged in a course of conduct (or knowingly placed the children with persons who engaged in conduct) that endangered the physical or emotional wellbeing of the children.  *See In re C.H.*, 89 S.W.3d at 25.  Although Mother did not believe that her drug use was harmful to the children, and Father completed a second outpatient rehabilitation program in March 2024 (after relapsing following his first rehabilitation program), this evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding.  Therefore, we hold that the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsection (E) of Texas Family Code Section 161.001(b).[3] We overrule this portion of Mother's second issue.

## Section 161.001(b)(1)(O)

The trial court may also order termination of the parent-child relationship if it finds by clear and convincing evidence that a parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for

---

[2] Father appealed and this Court affirmed.

[3] A court may additionally consider a parent's failure to complete a service plan as part of the endangering conduct analysis.  *See Interest of S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (citing *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.–Fort Worth July 16, 2015, no pet.) (mem. op.)).  As analyzed in detail *supra*, the record shows that since the initial denial of termination, Mother failed to complete the requirements of the Family Plan of Service and admitted to such failure.

abuse or neglect. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West 2023). Subsection (O) does not quantify any particular number of provisions of the family service plan that a parent must not achieve in order for the parental rights to be terminated. *See id.*; *In Interest of B.H.R.*, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.). However, Texas courts generally take a strict approach to application of Subsection (O). *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Subsection (O) does not "make a provision for excuses" for a parent's failure to comply. *See, e.g., In re S.Y.*, 435 S.W.3d 923, 928 (Tex. App.—Dallas 2014, no pet.).

Arndt testified at trial that, following the denial of termination in December 2022, Mother failed to comply with portions of the family service plan, and generally failed to complete all requirements thereof by the time of trial. Arndt stated that she made clear to Mother that the plan was an order of the court, both before and after the previous denial of termination.

The original iteration of the family service plan required Mother to attend inpatient rehabilitation for her substance abuse issues. However, because Mother used only marijuana, finding an inpatient program for her proved difficult. Arndt testified that Mother was only interested in a 28-day program at a specific facility and declined to attend several 60-day programs when beds became available. In June of 2023, the family service plan was altered to permit Mother to attend outpatient rehabilitation. As discussed above, Mother tested positive for marijuana before and after attending outpatient programs, in defiance of the court's order that she maintain sobriety. Mother was also required to submit to monthly random drug testing, which she failed to do multiple times after the denial of termination. The family service plan also required Mother to attend individual counseling and obtain a successful discharge of completion from Hughes Counseling. Mother did not begin attending counseling until May 2024, and was discharged by Hughes Counseling for non-attendance after only three visits.

Despite Mother's achievement of some of the plan's goals, namely completing parenting classes and attending outpatient rehabilitation, the evidence establishes that other requirements of the plan were not met. Mother's inability to successfully complete individual counseling, submit to drug testing, and maintain her sobriety are significant deficiencies, and the burden of complying with a court order is on the parent. *See In re D.N.*, 405 S.W.3d at 877. Subsection O does not quantify the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the plan. TEX. FAM. CODE ANN. § 161.001(b)(1)(O); *Int. of B.H.R.*,

10

535 S.W.3d at 122. We conclude that the evidence, viewed in the light most favorable to the finding, was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that Mother failed to comply with the requirements of the family service plan. Therefore, we conclude that the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsection (O) of Texas Family Code Section 161.001(b).

Having determined that the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsections (E) and (O) of Texas Family Code Section 161.001(b), we overrule the remaining portion of Mother's second issue.

## BEST INTEREST OF THE CHILD

In issue three, J.G. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest.

### Applicable Law

Trial courts have wide latitude in determining a child's best interest. *Interest of I.N.B.*, 662 S.W.3d 631, 647 (Tex. App.—Beaumont 2023, no pet.). In determining the best interest of the child, courts consider a non-exhaustive list of factors, including: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The Texas Family Code also provides a list of factors that we will consider in conjunction with the *Holley* factors. TEX. FAM. CODE ANN. § 263.307(b) (West 2023). These statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful

of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.*

No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence need not prove all the statutory or *Holley* factors to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Evidence supporting the statutory predicate grounds for termination of parental rights is also probative in determining whether termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28-29. In conducting a best-interest analysis, "a court may consider not only direct evidence but also may consider circumstantial evidence, subjective factors, and the totality of the evidence." *In re J.M.T.*, 519 S.W.3d at 269. We will apply the relevant statutory and *Holley* factors below.

**Analysis**

O.S.G. was approximately five years old at the time of trial, while O.N.V. and O.H.V. were approximately three years old. Arndt testified that O.H.V. has some specialized medical needs involving low blood iron for which he is under a pediatrician's care while with his foster family. Arndt further stated that Mother was aware of this illness, but never expressed concern or interest in O.H.V.'s medical condition after the children's removal.

12

In this case, as discussed above, there is evidence of an extensive history of substance abuse by Mother, the continuation of which presents a danger to the children if placed with Mother. A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex. App.—Waco 1997, pet. denied). There is also evidence of substantial substance abuse by Father, who per Mother's testimony would cohabit with her and the children. Mother testified that she and Father intended to live together indefinitely (with the children, if they were returned). Father continued to test positive for substances after completing an outpatient rehabilitation program in January 2023. As aforementioned, Father's last positive test was in August of 2023, with all subsequent tests being negative, but he failed to report for drug testing five times between August 2023 and the time of trial. *See Interest of E.A.R.*, 672 S.W.3d at 723. The trial court received into evidence the results of Father's drug screenings from March, June, and August 2023, which were all positive for methamphetamine.

Additionally, the record shows unwillingness on Mother's part to complete counseling services and effect positive personal changes, considering her unsuccessful discharge from counseling for non-attendance and continued use of illegal drugs despite her completion of outpatient rehabilitation programs. Pertaining to the children's emotional needs, both current and prospective, and the danger thereto, Arndt testified that Mother showed "inappropriate" behavior during visits with the children, including threatening physical harm to make a child stop crying. Kimberly Griffin, a CASA volunteer, similarly testified that Mother exhibited questionable parenting abilities during her visits with the children, such as failing to notice for several minutes when one of the children "ran off." Griffin recounted a similar incident of Mother threatening physical harm to stop unwanted behavior, which she stated was detrimental to the children's emotional well-being.

Pertaining to the stability of the proposed placement for the children, R.B., the children's foster father, testified that he and his wife became foster parents to the children approximately three years before trial.[4] He and his wife initially supported reunification, but eventually intervened to request termination because they were concerned for the children's well-being and wanted to adopt them. He believed that adoption was in the children's best interest because he

---

[4] O.S.G. was initially placed with a different foster family than O.N.V. and O.H.V. but was placed with her siblings in October of 2021.

and his wife could provide a stable home with opportunities for success. He noted that O.S.G. graduated preschool at the top of her class, both O.N.V. and O.H.V. were placed with older children in daycare because they were performing well, and all three children participated in music lessons. R.B. stated, "We don't do drugs or alcohol in our house." He testified that the children had positive relationships with a social support system of both friends and family members. Related to the children's feelings about returning to live with Mother and Father, R.B. testified that when the children returned from a visit, they were fussy, depressed, and frustrated, and he believed the adoption would provide the children with normalcy—a word also used by Griffin in her testimony, wherein she stated that O.S.G., O.N.V., and O.H.V. deserve both normalcy and permanency.

After reviewing the evidence and examining the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of O.S.G., O.N.V., and O.H.V., and therefore, the evidence of best interest is legally sufficient. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Although some evidence might weigh against the trial court's finding, such as the fact that Mother sought out and completed parenting courses, this evidence is not so significant that a reasonable fact finder could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that terminating Mother's parental rights is in the children's best interest. We therefore conclude that the evidence supporting the trial court's finding that termination of Mother's parental rights is in the children's best interest is factually sufficient. We overrule Mother's third issue.

## DISPOSITION

Having sustained Mother's second issue in part, we *modify* the trial court's judgment to delete the finding as to Section 161.001(b)(1)(D) and, having overruled Mother's first, the remainder of second, and third issues, as modified, we *affirm*.

BRIAN HOYLE
Justice

Opinion November 20, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 20, 2024**

**NO. 12-24-00214-CV**

**IN THE INTEREST OF O.S.G., O.N.V. AND O.H.V., CHILDREN**

Appeal from the 273rd District Court
of San Augustine County, Texas (Tr.Ct.No. CV-21-10180)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the trial court below should be modified and, as modified, affirmed.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below be modified to remove the finding regarding TEX. FAM. CODE ANN. § 161.001(b)(1)(D) located at Section 7.2.1; and **as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*