

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00524-CV

_____

IN THE INTEREST OF I.H., A CHILD

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-760222-24

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

A trial court terminated Mother's and Father's parental rights to their child, Ann.[1] Both appealed.

Mother's counsel filed a brief in which he asserted that her appeal was frivolous. After independently reviewing the record, we agree with counsel and affirm the judgment terminating her parental rights.

In contrast, Father filed a brief asserting four issues: (1) the trial court violated the United States and Texas Constitutions by denying his counsel's request for time to have Father brought from jail to attend trial; (2) the evidence is legally and factually insufficient to support the trial court's finding that he had knowingly placed or knowingly allowed Ann to remain in conditions or surroundings that endangered her physical or emotional well-being, *see* Tex. Fam. Code Ann. § 161.001(b)(1)(D); (3) the evidence is legally and factually insufficient to support the trial court's finding that he had engaged in conduct or knowingly placed Ann with persons who had engaged in conduct that endangered her physical or emotional well-being, *see id.* § 161.001(b)(1)(E); and (4) the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in Ann's best interest, *see id.* § 161.001(b)(2). We overrule Father's first issue because he failed to

---

[1]To protect the child's identity, we use an alias when referring to her and refer to her family members by their relationship to her. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

preserve any constitutional complaints at trial. We decline to address his second issue—his attack on the Subsection (D) finding—because our disposition of his third issue makes resolving this issue unnecessary. *See* Tex. R. App. P. 47.1. We overrule Father's third issue because the evidence is both legally and factually sufficient to support the trial court's Subsection (E) finding. And we overrule his fourth issue because the evidence is both legally and factually sufficient to support the trial court's finding that termination was in Ann's best interest. Having overruled Father's first, third, and fourth issues and having determined that resolving his second issue is unnecessary, we affirm the judgment terminating his parental rights.

## I. MOTHER

Mother's court-appointed appellate counsel has filed an *Anders* brief in which he concluded that her appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016). Counsel's brief meets the requirements of *Anders* by presenting a professional evaluation of the record and showing why she has no arguable grounds to advance on appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Taylor v. Tex. Dep't of Protective & Regul. Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified that he has mailed to Mother at her last known address a copy of his *Anders* brief and informed her of her right to examine the appellate record and to file a pro se response.

We gave Mother until December 18, 2025, to notify us if she wished to file a pro se response to counsel's *Anders* brief. We received no response. The Department filed a letter in which it agreed with Mother's counsel that she had no meritorious grounds to advance on appeal.

On receiving an *Anders* brief, we must independently examine the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 350 (1988); *Taylor*, 160 S.W.3d at 647. After reviewing the record, we agree with Mother's counsel that any issue that she might raise would be frivolous. Accordingly, we affirm the trial court's judgment terminating her parental rights.

## II.  FATHER

### A.  Background

At birth in November 2024, Ann's umbilical cord and meconium both tested positive for methamphetamines. That same month, the Texas Department of Family and Protective Services (the Department) obtained an ex parte order removing Ann from Mother and Father and appointing the Department as her temporary sole managing conservator.

When speaking to a Department investigator, Father admitted to having a history of using methamphetamines "on and off from the age of [fifteen]" but maintained that he had been sober for two years. Father further admitted having a recent drug charge. To a caseworker, Father later admitted that he smoked marijuana and that he and Mother had smoked methamphetamines together.

4

Despite asserting that he no longer used drugs other than marijuana, Father refused to take drug tests. Father told a caseworker that if he were tested, "there would probably be more substances in his system . . . than marijuana." Because Father had refused to take a drug test, the caseworker stated that the Department would have presumed that the "test would've been positive for more illegal drugs than just marijuana."

The record also showed that Father had been indicted for possession of less than one gram of methamphetamines in 2020, had been placed on deferred adjudication community supervision for that offense in 2022, and had been adjudicated guilty of that offense in 2023. In the motion to revoke unadjudicated community supervision, the State alleged that Father had possessed a controlled substance—without identifying the substance—in May 2023. Father, however, pled true to other allegations that did not involve the possession of a controlled substance, and based on those pleas of true, he was adjudicated guilty of the original possession offense.

The caseworker determined that Father did not work. For finances, Father explained that he donated plasma. Father entertained the possibility of filing for disability because of his own mental stress.

The caseworker learned that Father and Mother lived in a trailer home that purportedly belonged to Paternal Grandfather. The caseworker was never given permission to go inside. Not seeing the interior concerned the caseworker because the

agency had a policy that required caseworkers to see the inside of a home if a child was going to be living there. Father told the caseworker that the trailer he lived in was not stable and explained that it had plumbing and electrical issues. He conceded to the caseworker that he would not be able to care for his baby there.

When a caseworker visited Father at his home in late May, he stated that there was a pending eviction. The caseworker testified that when she went to Father's trailer in late July, she discovered that his trailer was no longer there and had been torn down. The caseworker found Mother at her friend's home, and Mother indicated that Father was living in a tent in a field. For safety reasons, the caseworker declined to go to the location.

In late August, the caseworker found Mother at another man's home. Mother told the caseworker that Father had moved his tent to a field in front of a Whataburger, but after going to that location, the two women were not able to find him. Mother then told the caseworker that Father might have gone to the house in which Paternal Grandfather was living, but their attempts to locate the house also failed.

The first caseworker, who had the case from December 2024 until March 2025, told Father that he could visit Ann and that the Department could provide transportation, but in the four months that the caseworker worked on the case, Father visited Ann on only one of the three scheduled occasions. The second caseworker, who worked on the case from March until September 2025, said that Father was

offered approximately thirty in-person or virtual visits with Ann. Of those thirty opportunities, Father attended only one. The second caseworker said that Mother had told her that Father had said that he did not want anything to do with the child.

Neither Mother nor Father named the child. Ann's given name on her birth certificate is the functional equivalent of Jane Doe.

Father had not completed anything on his service plan.

Regarding Ann's current placement and the Department's plans, the caseworker testified that in May 2025, Ann was placed with the woman who had adopted two of Mother's other children. Both this woman and her partner were appointed as Ann's temporary possessory conservators. Thus, Ann was living with two siblings.[2] The caseworker said that the couple provided a safe and stable home and had accessed Early Childhood Intervention to ensure that Ann—who had been exposed to illegal substances at birth—met her milestones. The caseworker described the couple as being very connected to Ann and described Ann as appearing to be very connected to them as well. The couple wanted to adopt Ann, and as adoptive parents, they could receive assistance from the Department, such as a monthly subsidy, therapeutic support and counseling, and college tuition for Ann.

---

[2]Although not entirely clear, Father does not appear to be the father of Ann's two siblings.

Father did not appear for trial. The second caseworker was never able to locate him after the trailer was torn down. And on the morning of trial, Father's counsel learned that he had been arrested and placed in the county jail.

## B. Discussion

### 1. Due Process and Due Course of Law

In Father's first issue, he contends that the trial court violated the Due Process Clause of the United States Constitution and the due course of law provision of the Texas constitution by denying his counsel's request for time to secure his attendance at trial after learning the morning of trial that he had been arrested and jailed. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. Father, however, failed to preserve this complaint for appellate review.

When Father failed to appear for trial, his counsel explained that he had been arrested that same morning and was in the Tarrant County Jail. Counsel moved for a continuance but did not argue that denying the motion would violate his due process or due course of law rights. Because Father did not raise these arguments at trial, he has not preserved them for appellate review. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *In re A.S.*, No. 02-23-00396-CV, 2024 WL 370141, at *7 (Tex. App.—Fort Worth Feb. 1, 2024, no pet.) (mem. op.). We overrule Father's first issue.[3]

---

[3]To the extent Father complains about the denial of his motion for continuance generally, a party's absence does not entitle it to a continuance. *In re J.P.-L.*, 592 S.W.3d 559, 575 (Tex. App.—Fort Worth 2019, pet. denied). A trial court generally does not abuse its discretion when it denies an oral motion, as Father's was

8

## 2. Sufficiency of the Evidence

In Father's second and third issues, he attacks the legal and factual sufficiency of the evidence supporting the trial court's findings under Section 161.001(b)(1).[4] And in his fourth issue, he assails the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding under Section 161.001(b)(2).

### a. Legal Principles

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Section 161.001(b)(1) of the Texas Family Code and (2) that termination is in the child's best interest under Section 161.001(b)(2). Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it

---

here. *Id.* And both the Department and Ann's attorney ad litem argued against granting a continuance effectively because he had not done any services. Under these circumstances, Father has not shown that the trial court abused its discretion. *See id.* And to the extent that Father argues that the trial court's comments regarding his lack of earlier participation in the case were not the type of facts of which it could properly take judicial notice, *see* Tex. R. Evid. 201, he failed to raise that objection and, thus, failed to preserve this complaint. *See Estrada v. Jafari*, No. 05-22-01227-CV, 2023 WL 5843816, at *2 (Tex. App.—Dallas Sept. 11, 2023, no pet.) (mem. op.).

[4]The trial court found conduct under Subsections (D), (E), and (N). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N). Although Father did not attack the (N) finding, we cannot affirm on that basis when the judgment is also based on (D) and (E) findings. Because findings under (D) and (E) have collateral consequences, we must address either the (D) or (E) finding. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

produces "in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

### b. Standard of Review

When reviewing the sufficiency of the evidence, we ask whether a reasonable factfinder could have formed a firm belief or conviction that the contested finding was true. *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020); *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). Both legal and factual sufficiency turn on this question; the distinction between the two lies in the extent to which disputed evidence contrary to the finding may be considered in answering the question. *A.C.*, 560 S.W.3d at 630.

In our legal sufficiency analysis, we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and disregard all evidence that a reasonable factfinder could have disbelieved. *Z.N.*, 602 S.W.3d at 545 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *A.C.*, 560 S.W.3d at 630–31. In comparison, factual sufficiency requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding to determine if in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*,

10

283 S.W.3d 336, 345 (Tex. 2009) ("When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review.").

The legal and factual sufficiency determinations overlap. *In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *8 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.); *In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.). Therefore, we will conduct a consolidated review. *See In re A.N.*, No. 02-22-00036-CV, 2022 WL 2071966, at *2 (Tex. App.—Fort Worth June 9, 2022, pet. denied) (mem. op.); *A.O.*, 2022 WL 1257384, at *8.

### c. Grounds under Section 161.001(b)(1)

In Father's second and third issues, he attacks the legal and factual sufficiency of the evidence supporting the trial court's findings of predicate grounds under Subsections (D) and (E) of Section 161.001(b)(1) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Only one predicate ground is needed to uphold a termination judgment on appeal. *In re L.T.*, No. 02-22-00197-CV, 2022 WL 15053329, at *4 (Tex. App.—Fort Worth Oct. 27, 2022, no pet.) (mem. op.).

### i. Subsection (E)

Subsection (E) permits termination when the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered a child's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E).

11

"Endanger" means to jeopardize or to expose to loss or injury. *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at \*12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.). The relevant inquiry under Subsection (E) is whether evidence shows that a child's endangerment was the direct result of the parent's conduct, which encompasses acts, omissions, or failures to act. *Id.* The conduct, however, need not be directed at the child or actually cause the child injury. *Id.* Courts may consider a parent's conduct that occurred outside the child's presence or after the Department removed the child. *In re M.S.*, No. 02-20-00147-CV, 2020 WL 6066400, at \*4 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.); *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet). Additionally, termination under Subsection (E) must be based on more than a single act; Subsection (E) requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re R.H.*, 693 S.W.3d 846, 856 (Tex. App.—Fort Worth 2024, pet. denied); *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

Here, a rational factfinder could have reasonably concluded that clear and convincing evidence showed that Father had engaged in conduct that endangered Ann's physical or emotional well-being. First, Father visited Ann only once (possibly twice)[5] after the removal. *See In re A.M.*, No. 02-24-00199-CV, 2024 WL 4157766, at \*13 (Tex. App.—Fort Worth Sept. 12, 2024, pet. denied) (mem. op.). A parent's

---

[5]Each caseworker testified that Father visited Ann once, but whether they were referring to the same visit or separate visits is not clear.

failure to regularly visit a child, a typical requirement of a service plan and a requirement of the service plans in this case, endangers the child's well-being. *In re D.A.*, No. 02-22-00260-CV, 2022 WL 17841133, at *7 (Tex. App.—Fort Worth Dec. 22, 2022, pet. denied) (mem. op.).

Additionally, Father failed to maintain safe and stable housing and, at the time of trial, he was supposedly living in a tent that he moved from place to place. *See A.M.*, 2024 WL 4157766, at *13; *In re H.H.*, 622 S.W.3d 460, 471 (Tex. App.—Texarkana 2020, no pet.). Conduct subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

Beyond not visiting Ann regularly and not having a safe and stable home, Father had an illegal drug problem that he failed to address. He admitted using methamphetamines in the past and acknowledged using them with Mother. Consequently, a rational factfinder could have reasonably concluded that these admissions established that he was a methamphetamine user. Although Father never tested positive for methamphetamines, that was not because he took drug tests that came back negative; rather, it was because he declined to be tested. Based on Father's refusal to take drug tests, a rational factfinder could have reasonably concluded that Father refused to take the tests because he would have tested positive for

13

methamphetamines.[6] *See In re B.M.M.*, No. 04-21-00089-CV, 2021 WL 3377587, at *3 (Tex. App.—San Antonio Aug. 4, 2021, no pet.) (mem. op.); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). To the extent that Father asserted that he was no longer using methamphetamines, a rational factfinder was not required to believe him. A factfinder is entitled to believe all, some, or none of a witness's testimony. *In re Z.D.*, No. 02-25-00114-CV, 2025 WL 2177389, at *3 (Tex. App.—Fort Worth July 31, 2025, pet. denied) (mem. op.). A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability and, in the process, endangers the child's physical and emotional well-being. *In re J.D.*, No. 07-23-00091-CV, 2023 WL 4753771, at *7 (Tex. App.—Amarillo July 25, 2023, pets. denied) (mem. op.). A parent's continuing substance abuse can qualify as a voluntary, deliberate, and conscious course of conduct that endangers the child's well-being. *In re A.J.R.*, No. 14-18-00951-CV, 2019 WL 1523586, at *5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2019, pet. denied) (mem. op.). A parent's drug use exposes the child to the possibility that the parent may be impaired or imprisoned

---

[6]Father contends that when a parent refuses to take a drug test, the Department's presumption that the parent would have tested positive contradicts Section 261.307(a)(2)(I), which requires investigators to verbally notify parents of their right to refuse to a drug test when the investigators first contact them. *See* Tex. Fam. Code Ann. § 261.307(a)(2)(I). We disagree. Nothing in Section 261.307(a)(2)(I) precludes the Department's presumption that when a parent refuses to take a drug test, it is because the results would have been positive.

and, thus, unable to care for the child. *Id.* In Father's case, this possibility became reality; he was arrested and jailed the morning of his termination trial.

Father exhibited parental indifference—to the point of not even giving Ann a name. A disinterested parent poses an emotional and physical danger to the child. *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

We hold that the evidence is legally and factually sufficient to show that Father engaged in a course of conduct that endangered Ann's physical or emotional well-being. *In re J.E.*, No. 02-23-00141-CV, 2023 WL 5115202, at *5 (Tex. App.—Fort Worth Aug. 10, 2023, no pet.) (mem. op.). Accordingly, we overrule Father's third issue challenging the legal and factual sufficiency of the evidence supporting the Subsection (E) finding.

## ii. Subsection (D)

Because we have held that the evidence is legally and factually sufficient under the Subsection (E) ground, and because only one predicate ground is needed to affirm the judgment, we need not address Father's second issue attacking the legal and factual sufficiency of the evidence supporting grounds under Subsection (D). *See* Tex. R. App. P. 47.1; *N.G.*, 577 S.W.3d at 237 n.1; *J.E.*, 2023 WL 5115202, at *6.

## d. Best Interest under Section 161.001(b)(2)

In Father's fourth issue, he contends that the evidence is legally and factually insufficient to support the trial court's finding that termination was in Ann's best interest under Section 161.001(b)(2) of the Texas Family Code.

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *A.C.*, 560 S.W.3d at 631. Evidence that is probative of the predicate grounds under Section 161.001(b)(1) may also be probative of best interest under Section 161.001(b)(2). *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re B.H.R.*, 535 S.W.3d 114, 123 (Tex. App.—Texarkana 2017, no pet.). We also consider the evidence in light of the following nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249; *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some

factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re Z.G.*, No. 02-23-00038-CV, 2023 WL 3521848, at *4 (Tex. App.—Fort Worth May 18, 2023, pet. denied) (mem. op.); *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *7 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.).

In this case, a rational factfinder could have reasonably concluded that clear and convincing evidence showed that terminating Father's parental rights was in Ann's best interest. Father argues that his rights were terminated improperly because he was economically disadvantaged. *See* Tex. Fam. Code Ann. § 161.001(c)(2). Poverty is not a basis for termination, but a parent's failure to provide a stable home and otherwise provide for a child's needs may contribute to a finding that termination is appropriate. *In re D.S.*, No. 02-15-00350-CV, 2016 WL 1267808, at *9 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op.). Father acknowledged that he could not provide Ann with a safe and stable home. Yet the evidence went beyond Father's inability to provide a safe and stable home. He told Mother that he had no interest in Ann. His conduct throughout the case was consistent with his abdicating any responsibility for raising her. Father rejected the Department's help, and other than visiting Ann once (maybe twice), he made no effort to show that he was a viable parenting option.

In contrast, Ann had been placed in a prospective adoptive home that was both stable and safe. Two of her siblings were already in that home. With her adoption, the Department could provide a subsidy, therapeutic support and counseling, and college tuition.

Applying the appropriate standards of review, we conclude that legally and factually sufficient evidence supports the trial court's best-interest finding and overrule Father's fourth issue. *See Holley*, 544 S.W.2d at 371–72; *In re P.L.*, No. 02-22-00463-CV, 2023 WL 2703805, at *7 (Tex. App.—Fort Worth Mar. 30, 2023, no pet.) (mem. op.).

## III. CONCLUSION

Having agreed with Mother's counsel that her appeal is frivolous, we affirm the trial court's judgment terminating her parental rights.

Having overruled Father's first, third, and fourth issues and having determined that resolving his second issue is not necessary to our disposition, we affirm the trial court's judgment terminating his parental rights.

Both Mother's and Father's counsel remain appointed in this case through any proceedings in the Texas Supreme Court unless otherwise relieved of these duties. *See P.M.*, 520 S.W.3d at 27; *In re J.W.*, No. 02-22-00161-CV, 2022 WL 15076379, at *1 (Tex. App.—Fort Worth Oct. 27, 2022, pet. denied) (mem. op. on reh'g).

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  January 30, 2026